## WILLIAM SAVAGE *versus* JOHN A. MERLE

A and B, partners in business at New Orleans, give notice in September 1822, tha the partnership will determine on the 31st of December, and A and C give notice that after that day the business will be continued by them as copartners. In No· vember C draws a bill at Boston upon A and B in favor of the plaintiff, at sixty days' sight, which the plaintiff transmits to New Orleans in a letter addressed to A and C, directing them to do the needful with it and place it to his credit, and to remit the proceeds either in consignments or bills of exchange. The letter is received by A and B on the 15th of December, who answer on the 21st, that it is accepted and shall meet due honor. It is credited to the plaintiff by A and B upon its receipt, and is never protested. C arrives at New Orleans on the 15th of December and makes use of A and B's counting-house as his place of business, and probably has access to their books. On the 4th of January, 1823, A and B write to the plaintiff and refer to an annexed letter of C, in which he states that the contemplated partnership is deferred, to enable A and B to settle their concerns, and that the same attention will be paid to business as would have been done by the intended firm. In the beginning of March the plaintiff writes to A and B to make remittances, and in the middle of the month they stop payment, having made no remittances. *Held,* that C was not liable as drawer of the bill, and that he was not the plaintiff's agent and so not liable for negligence.

THIS was an action of *assumpsit,* in which the plaintiff declared against the defendant for money had and received, and as drawer of a bill of exchange, and in some counts for negligence as his sole agent, and in others as joint agent with William Wyer, since deceased, in respect to the same bill and another. The material facts are stated in the opinion of the Court.

*March 19th.* The cause was argued by *Prescott* and *Savage,* for the plaintiff, and by *Hubbard* and *Sewall,* for the defendant.

*Aug.* 1827, *at Taunton.*

PARKER C. J. delivered the opinion of the Court. The plaintiff attempts to charge the defendant as drawer of a bill of exchange on W. & N. Wyer, a mercantile house in New Orleans, for 1256 dollars and 55 cents, dated November 7th, 1822, at sixty days' sight. This bill was drawn in Boston, and was remitted to New Orleans under cover of a letter directed to Messrs. Wyer & Merle, dated November 9, 1822, with a request that they would "do the needful with it and pass it to the credit of the plaintiff." The object of the plaintiff in procuring and remitting this bill seems to have been, to lodge funds in New Orleans to be employed in advances upon goods which were to be consigned to him, and

the letter contained a direction, if favorable consignments could not be obtained, to remit the proceeds in bills on the Eastern States or on England.    At the time this bill was drawn and remitted, no such mercantile firm as Wyer & Merle existed, but a partnership between W. Wyer (the surviving partner of the house of W. & N. Wyer) and the defendant was in contemplation, to commence on the 1st of January, 1823 ; and circulars giving notice of that intention, dated at Boston the 20th of September, 1822, signed by William Wyer and John A. Merle, were sent to the correspondents of the house of W. & N. Wyer, as also a circular bearing the same date, signed W. & N. Wyer, giving notice of the intended dissolution of that firm on the 31st of December, 1822.    One of these circulars was received by the plaintiff in Boston, and acknowledged by him in a letter addressed to *Wyer & Merle*, New Orleans, dated September 27th, 1822.    This bill was passed to the credit of the plaintiff in the books of *W. & N. Wyer*, it having been received by W. Wyer in New Orleans on the 15th of December, and was acknowledged in a letter of the 21st of December, signed W. & N. Wyer, in which it is stated, that the bill " is accepted and will meet due honor."    On the 15th of December the defendant arrived at New Orleans.    He had no other place of business than the counting room of the store occupied by the firm of W. & N. Wyer, but it appears by the depositions in the case, that he had not entered into business with the firm, *though it is probable he had access to, and opportunities of examining, the books of W. & N. Wyer*.    The contemplated partnership of Wyer & Merle never took effect.    In a letter written by Merle, dated the 4th of January, 1823, to the plaintiff, he informs him of the suspension of his contemplated copartnership, and states that it arises not from any misunderstanding or difficulty, but is merely with a view to give sufficient time to W. & N. Wyer to close the concerns of that firm ; and adds, " *the same attention will be paid to business as would have been done by the intended firm*."    No consignments nor remittances were made to the plaintiff on account of the bill in question, nor was the bill ever protested for non-payment, or any notice given to

Savage
v.
Merle.

the defendant that he would be looked to as indorser, unti after the failure of W. Wyer, which was a month after the bill was payable. The third of the set of bills, which was in evidence on the trial, was indorsed by the plaintiff, " payable to Wyer & Merle ;" but whether the part inclosed in the letter of November 9th was so indorsed or not, did not appear.

It is very clear, that on these facts the defendant cannot be charged as drawer of the bill, upon any other ground than that he drew without having any funds or any expectation of funds in the hands of W. & N. Wyer ; a point which has not been urged in argument. No steps were taken to make him accountable. There was no presentment of the bill to the drawee for acceptance or payment, other than sending the bill itself to him, and no protest, nor notice of any kind to the drawer. The bill was sent on to the drawee in a letter to him and Merle, and directed to be passed to the credit of the plaintiff, which was done, except that the credit was given by W. & N. Wyer, and not by Wyer & Merle. It was *functus officio* as a bill, and could not have been negotiated, for it had got into the hands of the acceptor, and he became indebted for the amount immediately to the plaintiff, with a credit of sixty days from the time when he received it. Notice was given, in the letter of December 21st, that the house of W. & N. Wyer had credited the bill. Upon the count on the bill then it is clear that the plaintiff cannot recover, for none of its allegations are proved, except that the defendant drew the bill ; which alone does not render him liable.

But in another count the defendant is attempted to be charged, as the agent of the plaintiff, with a duty devolved upon him to take care of this and another bill drawn by S. S. Gair on W. & N. Wyer, on the 21st of November, at sixty days' sight, and remitted, like the first, to Wyer, under cover of a letter to Wyer & Merle, giving the same directions as were given in relation to the former bill, and credited to the plaintiff by W. & N. Wyer about the 25th of December.

The facts on which this charge is supposed to be made out, are the contemplated copartnership of Wyer and Merle,

ne transmission of these bills to them, the presence of Merle at New Orleans when the bills were received, and the expression in his letter of January 4th, viz. *" the same attention will be paid to business as would have been done by the intended firm."* There is nothing in any of these facts which separate Merle from Wyer, so that if there was any agency it must have been joint, and then Merle is to be looked to as surviving agent, Wyer being dead. But these facts must be looked at distinctly, in order to see whether there was such a relation of principal and agent as will authorize the plaintiff to call upon the defendant for damages on the score of negligence. The remitting of the bills to Wyer & Merle would have given color for this charge, if it appeared that Merle was privy to it ; but there is no evidence of such privity. He drew the bill on W. & N. Wyer. It does not appear that he knew it was made payable to Wyer & Merle, or that it was sent in a letter directed to that contemplated firm. Though at New Orleans when the bill arrived, it appears from the depositions, that Merle did not interfere with the concerns of W. & N. Wyer, and if he saw the books, he saw that the bill was charged to that house, and not to Wyer and Merle, who were not connected in business at the time.

With respect to the letter of the 4th of January, it is capable of two constructions ; either that Wyer would attend to the business in the same manner as if the partnership had been entered into, or that Wyer and Merle would do so, notwithstanding there was no formal copartnership. If the latter construction is the true one, the purport of this declaration would still be doubtful. Did it relate to the general care of such business as should fall into their hands after the 1st of January, when the old firm was to cease and the new one to begin, or to the particular care of the concerns of the plaintiff already in the hands of W. & N. Wyer, such as looking up these bills, seeing that they were paid, &c. ? We think the latter would be a forced and violent construction of the expression. It would go to make Merle liable for more than he would have been, had the partnership commenced as contemplated ; for in that case he would not have been liable on a bill drawn on W. & N. Wyer, and passed in their books to

the credit of the payees. Besides, there was nothing to do in relation to these bills, which required an agency. W. & N. Wyer had become indebted in their amount to the plaintiff, and it was for them to remit the proceeds. There is nothing to prove that Wyer and Merle together, or Merle alone, had undertaken to collect this debt or see to this remittance. It was an affair of the old company, with which Merle had nothing to do, either as a partner, or as agent for the plaintiff.

It is true, it should seem from the conduct of Savage, in remitting the bills to *Wyer & Merle*, that he contemplated they were to go into the funds of that house, and the fact that they were not payable until after that connexion would be established according to the original plan, favors this supposition ; but in order to charge Merle on this ground of *quasi* partnership, it ought to appear from some act or declaration of his, that the copartnership was anticipated in regard to these bills, or that Merle had undertaken to be responsible for the right disposition of them. We think the evidence has a contrary tendency. Merle would have taken care to secure himself, if he had known or thought himself responsible. He would at least have claimed to retain the balance of account due to W. & N. Wyer, instead of paying it over to the syndics on the failure of W. Wyer. Nor is the conduct of the plaintiff free from circumstances which look as if he never considered Merle liable. Two months after he had been informed that the partnership had not taken place, and when he had received letters from W. & N. Wyer, he writes *to that firm* and requests from them remittances on account of these very bills, if consignments had not been made to him according to his original direction ; and the fact of his bringing a suit first against W. Wyer alone, though by no means decisive of itself, carries with it a strong indication of a belief that Wyer alone, as surviving partner of the house of W. & N. Wyer, was responsible to him on the bills. The acknowledgment also of the receipt of the bills by W. & N. Wyer, and that they were passed to the credit of Savage by that house, was sufficient notice to have drawn from Savage some explanation, if he considered Merle in any way answer-

able.  We cannot see sufficient evidence to charge the defendant on the ground of negligence as agent, for there is no proof of any engagement on his part, either express or implied, to look after the interests of the plaintiff in this particular.

On examining the papers referred to our consideration by the report, some question has arisen, whether the bill drawn by Merle was not wholly without funds, or such expectation of funds as would entitle him to notice.  The bill being payable at a day after the copartnership was to have taken place, and it not appearing that Merle had any funds in the hands of W. & N. Wyer, or that he had made any shipments to them, or that he was charged with the amount of this draft, in their account with him, it may be that he would be answerable as drawer without notice, or on the count for money had and received, for the amount of that bill which was drawn by him.  But as these circumstances were not relied upon by the plaintiff's counsel, and as the cause would have been put to the jury had this ground of recovery been relied upon, we must suppose the facts would not make out a case for the plaintiff.  If however there has been any mistake on this head, there may be a motion to take of the nonsuit and for a trial in regard to the first bill only.